UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 22-10286-WGY |
| | ) | |
| LOC VO | ) | |

MEMORANDUM IN AID OF SENTENCING AND
MOTION FOR DOWNWARD DEPARTURE AND VARIANCE

The defendant Loc Vo, through undersigned counsel, respectfully submits this memorandum for the Court's consideration at sentencing in the above-captioned case. The sentencing is set for July 25, 2023 and follows Mr. Vo's guilty plea to one count of wire fraud, in violation of 18 U.S.C. §1343. Counsel urge the court to sentence Mr. Vo to incarceration for a period of one year and one day, followed by two years of supervised release. Counsel further request that the Court recommend a designation to Devens here in Massachusetts, as this will allow him to receive visits from his daughter.

SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

A sentencing court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough v. United States, 552 U.S. 85, 101 (2007); 18 U.S.C. § 3553(a). A "not greater than necessary" sentence is one that is "minimally sufficient to achieve the broader goals of sentencing." United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008). As set forth in 18 U.S.C. § 3553(a), the broader goals of federal sentencing are the need for the sentence imposed to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and, (4) provide

the defendant with needed training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In fashioning a sentence that is not greater than necessary to achieve the above goals, the court must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and, (4) the need to provide restitution to any victim(s).  18 U.S.C. § 3553(a).

In addition, §3553 requires sentencing courts to properly calculate and consider the advisory Sentencing Guidelines range, as well as any pertinent policy statements issued by the Sentencing Commission.  While the guidelines are a starting point for determining a fair and just sentence, "[t]he Guidelines are not only not mandatory; they are also not to be presumed reasonable."  Nelson v. United States, 555 U.S. 350, 352 (2009) (per curiam).  In addition to granting a variance from the guidelines, a court may depart where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . ."  18 U.S.C. §3553(b).  Moreover, the sentencing court is permitted to consider any disagreement that it has with the policy that supports the Sentencing Commission's advisory guideline range for any particular offense.  Spears v. United States, 555 U.S. 261 (2009) (a sentencing court's categorical disagreement with the policy choices underlying a particular guideline range is, by itself, sufficient to justify a non-guideline sentence).  In short, a court fashioning a just and reasonable sentence must "consider all of the § 3553(a) factors," and "make an individualized assessment based on the facts presented."  Gall v. United States, 552 U.S. 38, 49-50 (2007).

Loc Vo's Personal Background

Loc Vo is one of eight children. He was born in 1967 in what was South Vietnam and was raised in Saigon. His family owned a steel mill and was very well-to-do. They led a privileged life and lived in a large, palatial home with servants. Loc was chauffeured to school every morning. This luxurious life came to an abrupt end in 1975 when the family was forced to emigrate from Saigon. They abandoned their home, but the house remained the family's property through the intervening decades.

The Vo family came to the United States piecemeal, with some of the children coming first without their parents, and the parents coming later. They led the peripatetic existence of refugees for several years before ultimately settling in Wheaton, Maryland, not far from Washington, D.C. The family worked very hard and life was difficult. Loc and his siblings were all excellent students in school and were high academic achievers. They also all worked jobs while going to school. Mr. Vo graduated from Wheaton High School and went to Yale University, where he earned a degree in economics.

Loc's older brother Chon was a student at MIT while Loc was finishing his degree at Yale. When Loc graduated, he moved to Cambridge to study metallurgy in order to follow in the footsteps of his father, uncles, and grandfather. In 1989, Chon and Loc created a food truck business, and it became highly successful. The business put the Vo family on a sound financial footing and the entire family ended up migrating to Cambridge.

Around 1992, both Loc and Chon decided to leave the food business to their mother while they pursued other careers. Chon moved to the west coast, while Loc returned to Vietnam. He had a career there working at Jebsen & Co., Ltd., a large conglomerate based in Hong Kong.

He was Chief Representative and General Manager for the country of Vietnam, in charge of all operations there. He married Quynh-Anh Nguyen in 1994, and in 1995 their daughter Margaret ("Maggie") was born. The marriage was short-lived, and after the couple separated Margaret lived with her mother and later a stepfather when her mother remarried. Mr. Vo stayed in his daughter's life, but returned to the U.S. in 1999. In 2003 Margaret came to live with her father.

In the years between his departure for southeast Asia and his return, Mr. Vo's mother, with help from her husband and her other children, ran the food truck business that Loc and Chon had started more than a decade earlier. Once back in the U.S., Mr. Vo started a publishing company called IndyPublish to commercialize a new book publishing technology developed by Xerox. He and Margaret lived in a condo he purchased near his mother's home. Things carried on in this fashion for a number of years, although family troubles were brewing. Undersigned counsel cannot describe and do not fully understand the nature of the intrafamily infighting that began to develop. Mr. Vo describes jealousy on the part of some, but not all, of his siblings that was largely instigated by his mother for reasons that he cannot articulate. But this fracture became full-blown in 2008. That year, Mr. Vo's mother turned the food truck business over to him because it was collapsing, even though his siblings believed it was valuable. Also in 2008, his father gifted him title to the old family home in Saigon. Even though at this point the building was extremely run down,[1] the father's decision to give Loc the house was viewed by most of his siblings as their being disinherited. They took this development very badly, and five

---

[1] Think "Tara" after Appomattox.

of his seven siblings from that point on viewed Loc with enmity and resentment.  It is a breach that has never healed.[2]

### The Evolution of Smart Gourmet and the Offense Conduct

As stated earlier, in about 1989, Mr. Vo and his brother Chon started the family food truck business.  It began under the name VBM Corp. and operated one truck on the MIT campus in the Kendall Square area.  The business's customers were primarily MIT students, faculty, and staff.  The business focused on Vietnamese-style food with an emphasis on fresh vegetables and ingredients and being served fast, hot, and affordable, and it was very popular with the MIT crowd.  Loc and Chon ran the business for a couple of years; it was then turned over to their mother, who continued to run it.

Their mother ran the food truck business from 1992 until about 2008.  In that decade plus, Mrs. Vo severely mismanaged the business.  She had no idea how to run it, and under her oversight it developed tax problems, licensing problems, insurance problems, safety problems, and problems with equipment upkeep.  In Mr. Vo's words, it was "run into the ground."  When Loc returned to Massachusetts in 2003, he had no part of the business, but he could see what was going on.  In 2008 his mother gave the business back to him; he was present and Chon was not, having moved to California.

Taking over the business meant a life of grueling work and Mr. Vo poured his heart and soul into the business.  He and Maggie were living in his condo in Cambridge, and she was 12 or 13 when Loc took back the business.  Maggie describes an existence where he was working

---

[2]  Mr. Vo states that all manner of family-involved litigation ensued around the food business; this took years to resolve and ended up costing him a great deal of money in legal expenses and settlement costs, as well as money to stabilize and save the business.

virtually 24 hours a day. While Maggie was attending school, Loc was cooking at the business kitchen in Newmarket Square in Dorchester or in the truck. Maggie would take care of herself after school until her father came home. They would eat together and then he would return to work in Dorchester. She would go with him and stay with him at the kitchen and sleep there while he worked. He would get some sleep in himself and then would drive back to Cambridge early in the morning for her to get ready for school. That was the routine through Maggie's middle school and high school years. In 2013 Maggie was accepted to Harvard College after high school. She began living in a dorm on campus and spending her summers doing programs. As a result, Mr. Vo began living in shared quarters and Maggie stopped living with him.

Mr. Vo was incredibly dedicated and passionate about the business. He believed that through hard work and a problem solving mindset, the business might be saved. He methodically documented every problem that he encountered, and he produced a manual on how to operate the business. Mr. Vo was also very proud of the food he served and of the loyalty of his workers and customers. His devotion to his work is reflected in the support letters to this Court. Over and over Mr. Vo's former employees speak of how they all felt part of a team, indeed a family, and took great pride in their food and the company's popularity with customers. They also unanimously speak about how hard they worked and how hard Mr. Vo worked to keep the business alive.

The convictions in the case arose from Mr. Vo's abuse of Covid relief funds. Of course, the fact of the pandemic is central to the story of this case. In 2018 and 2019, the business became cash positive partly due to Mr. Vo's strategy of reducing unit costs through massive bulk purchasing, a strategy that would devastate him in the pandemic. In the spring of 2020, Smart Gourmet and its food service operation, like so many restaurants and food service operations

everywhere, took a massive blow and essentially shut down. His business model particularly relied on large crowds, which were no longer possible. His bulk purchases of ingredients and supplies became massive losses in the unexpected pandemic. His business suffered a second major blow when Harvard's announcement of a major real estate development, building a road through where his kitchen operated, effectively ended his kitchen lease of 10 years. His brother Chon Vo writes of the emotional devastation Loc experienced with the onset of the pandemic and its destruction of the business, along with the Harvard lease termination. Chon has noted in a conversation with counsel that Loc simply refused to give up on the business. He remembers telling Loc, "Maybe God meant for you to do something else," but his brother could not let go of this enterprise that had come to define him.

Mr. Vo applied for and took the pandemic relief funds that are the gravamen of this case in hopes of being able to resurrect the business and keep paying some of his workers. He certainly did this the wrong way and he broke the law in doing so. The explanation is not intended to be an excuse. He was not entitled to the funds he received and he never should have transferred the funds to his investment accounts. But it is nonetheless true that he spent some of the funds on business purposes. A cursory examination by undersigned counsel of business invoices and receipts from Smart Gourmet showed that in 2020 and 2021 Mr. Vo was spending money on things like rent for his kitchen, to the tune of approximately $12,000 a month, dishwashing equipment, and repairs to one of the company vehicles.

<u>Loc Vo's Personal Characteristics</u>

Loc Vo is 56 years old. He speaks three languages: Vietnamese, French, and English. As stated earlier, he has an economics degree from Yale. He has worked at the pinnacle of the corporate world and at the low level of the street food business doing hard manual labor. He is

7

highly intelligent with an IQ over 130. Psychological testing does not reveal any evidence of psychopathology or other mental disorders. He is very high-functioning. The etiology of his offenses is not grounded in mental illness. To counsel, however, it appears to be rooted in the family rift that developed after Loc's mother returned the food business to him in 2008. In Loc's own words,

> I needed to preserve the business as a key evidence against the campaign of smears and theft [by my siblings]. If the business failed on my watch, the smear story would be that "we gave him a multi-million dollar business and he destroyed it." I have kept the business alive so that when there is a reasonable fact finding discussion, I can offer the vastly improved business to them essentially for free, proving [the falsity of] one of the key lies against me.

It appears to counsel that Mr. Vo was driven to his extreme behavior in order to save a business that was important to his family and to restore his good name in his family. He will not achieve either of these ends.

Mr. Vo has a history of helping friends and employees who found themselves in need. Janice Cleary, who worked as a cashier for him, recalls that when a typhoon hit her homeland in the Philippines in 2013, Mr. Vo sent relief funds to rebuild schools. Another former employee, Nhat Huynh, tells of being hired as a driver after he returned home from a deployment to Iraq. Mr. Huynh suffered from PTSD, but Mr. Vo's humane treatment helped him to recover. Mr. Huynh also learned the professional skill of driving large trucks and now is a licensed CDL driver. Another food service operator, Sunil Nepali, writes that during the pandemic when it was difficult to get cooking equipment repaired, Mr. Vo jumped in to repair some of Mr. Nepali's ovens, and Mr. Vo only charged him for the time of his employees, and not for any of his own time. It was done in a spirit of friendship and "we're all in this together." A close friend, Maurice Benesch, writes of their longstanding friendship dating back to their 20s. Mr. Benesch recalls how Mr. Vo ended up being drawn back into the food truck business after he had left it

behind because of family pressures. He writes that he knows Mr. Vo is remorseful for his actions and knows that he has damaged the things he cared most about. His daughter Maggie's letter overflows with her love for her father. She admires the personal sacrifices he made in the decade before Covid hit the world in service of the business. She describes a life of selflessness because succeeding was so important. Being a dutiful and loving daughter, she admires these traits.

Sentence Recommendation

Undersigned counsel request that this Court sentence Mr. Vo to one year and one day of incarceration, with two years of supervised release to follow. Counsel also request that no fine be imposed because of Mr. Vo's large restitution obligation. This sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing as outlined above. Though Covid relief fraud crimes may have occurred with some frequency, the facts of this case are unusual. Mr. Vo's business was almost a community institution, with a long history and presence in Cambridge. Mr. Vo did not use his relief funds to support an extravagant lifestyle. He lived and still lives essentially in a rooming house, and did so for years before these events took place. His motivation was not about gaining personal glory; Loc Vo was desperate to save his business and was concerned with trying to heal a family breach. Again, these remarks are not meant to excuse what he did, but rather to explain his actions. His motives were not what is usually seen in these kinds of cases. He promptly accepted responsibility for his conduct in this case and has agreed to disgorge the remaining relief funds in one of the investment accounts (E*Trade account) to the government. In sum, a variance from the guidelines is called for by the history and characteristics of this defendant and by the parsimony principle, *i.e.,* that the sentence imposed should be sufficient, but not greater than necessary, to meet the goals of sentencing.

CONCLUSION

For the reasons set forth above, and for any others that may appear to the Court at the sentencing hearing, counsel for the defendant Loc Vo request the Court to impose a sentence no greater than one year and one day. Counsel also request that the Court not impose a fine, as Mr. Vo has a very large restitution obligation.

                    Respectfully submitted

                    By his attorneys,

*/s/Syrie D. Fried*
Syrie D. Fried
MA BBO # 555815
sf@gscfboston.com

*/s/Philip G. Cormier*
Philip G. Cormier
MA BBO #554515
pc@gscfboston.com
Good Schneider Cormier Fried & Brooks
83 Atlantic Avenue
Boston, MA 02110
Tel. 617-523-5933
Fax. 617-523-7554

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing memorandum was served this 20th day of July, 2023, via the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/Syrie D. Fried</u>