UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 22-CR-10286-WGY |
| LOC VO, | ) | |
| | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully submits this memorandum in support of its sentencing recommendation for Loc Vo (the "Defendant") of incarceration for 25 months, supervised release of 36 months, and forfeiture and restitution as set forth in the plea agreement. *See* Docket 16 (Plea Agreement), ¶ 4.

## Background

In early 2020, as the COVID-19 pandemic disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic.

One emergency relief program authorized by the CARES Act was the Paycheck Protection Program ("PPP"). Under the PPP, small businesses could apply for loans that were processed and funded by participating lenders. The loans were guaranteed by the United States Small Business Administration (the "SBA") and could be forgiven if borrowers spent the loan proceeds on permissible expenses, including spending a substantial percentage on payroll. To qualify for a PPP loan, a business was required to submit an application and supporting

1

documentation that established, among other things, the number of persons employed by the business and the amount of the business' payroll expenses.

Another emergency relief program authorized by the CARES Act was the Economic Injury Disaster Loan ("EIDL") program. This was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. In order to obtain an EIDL, a qualifying small business had to submit an application to the SBA that provided information about its operations, such as its number of employees, its gross revenues for the 12-month period preceding the disaster, and its cost of goods sold in the 12-month period preceding the disaster. The EIDL funds could be used for payroll expense, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

Finally, the American Rescue Plan Act established the Restaurant Revitalization Fund ("RRF") to provide funding to help restaurants and other eligible businesses, such as food stands, food trucks, food carts, and others, stay open during the COVID-19 pandemic. The SBA administered and funded the RRF. Pursuant to the program rules, RRF loan recipients could only use the funds for the following business expenses: payroll costs, payments on any mortgage obligations, rent payments, debt service, utility payments, maintenance expense, construction of outdoor seating, supplies, food and beverage expenses, supplier costs, and operating expenses.

### The Scheme to Defraud

As set forth in the Presentence Investigative Report (the "PSR"), the Defendant applied for and received five different pandemic assistance related loans and then immediately transferred the money to either his E-Trade or Robinhood Account. ¶ 9. In all, the defendant obtained more than $1.5 million from PPP, EIDL, and RRF funds. *Id.* The defendant submitted

loan applications in the name of his food truck business, Smart Gourmet, as well as from a defunct, former publishing company, Indy Publish.

As set forth in greater detail in the PSR, the defendant then used those funds to immediately invest in the stock market. He then purchased several different stocks, including a biotechnology company, an internet marketplace company, a gaming company, and electric car manufacturer, and more. For example, on July 1, 2020, Vo received a $149,000 EIDL for his Smart Gourmet business. ¶ 13. On July 3 and July 6, 2020, he respectively wired $100,000 and $43,000 to his E-Trade account. ¶ 14. Additionally, on May 12, 2021, Vo received a PPP loan for Indy Publish (a defunct company) in the amount of $106,674. ¶ 28. The next day, he wired $90,00 to his E-Trade account. ¶ 29.

In all, the scheme to defraud lasted for roughly one year—July 2020 to July 2021.

## Guideline Sentencing Range

There is no dispute that the defendant's Guideline Sentencing Range is 33 to 41 months. Both parties and the U.S. Probation Office ("USPO") agree that the Defendant has no prior convictions and that he falls within Criminal History Category I. The parties similarly agree that his total offense level under the Sentencing Guidelines is 20, because, among other things, the defendant caused loss that was more than $1.5 million but less than $3.5 million.

## Sentencing Recommendation

The United States respectfully submits that a sentence of 25 months imprisonment is appropriate in consideration of the guideline sentencing range and the various factors enumerated at 18 U.S.C. § 3553(a).

A sentence below the guideline sentencing range is appropriate in light of the Defendant's early acceptance of responsibility, his absence of prior criminal convictions, his efforts to make restitution payments, and various other mitigating factors. As set forth in the PSR, the Defendant immigrated to the United States and obtained professional and education success. The Court should weigh these factors in Defendant's favor.

Nevertheless, and as will be further addressed at the sentencing hearing, the government respectfully submits that a sentence of one year and a day, as requested by the Defendant, would be inadequate to satisfy those factors enumerated at 18 U.S.C. § 3553(a). The Defendant took advantage of the COVID-19 pandemic to divert emergency relief funds for his own personal use. His scheme was deliberate and calculated—he applied for and received five different COVID-19 loans. The fraud was not a momentary lapse in judgement—he submitted five different applications over a one-year period. And each time he received the relief funds, he chose to transfer those funds to his personal investment accounts.

The Defendant undertook this scheme despite appearing to be both financially stable and highly educated. While the defendant has undoubtedly faced challenges immigrating to this country, he also unquestionably achieved success— he obtained a bachelor's degree in economics from Yale University. ¶ 76. He has worked in several different professions, including finance, international trading, book-publishing and most recently, food services. ¶¶ 77-78. By his own admission, he has an exceptionally high IQ of over 130, which has ensured, coupled with an Ivy-league degree, tremendous potential. *See* Defendant's Sentencing Memorandum, p. 8. ECF No. 33. And he does not suffer from any type of addiction. In short, the simple motivation for this crime appears to have been greed. There is no other innocent

explanation for receiving COVID relief funds and then repeatedly choosing to transfer those founds into personal investment accounts and then speculating on different stocks.

  A sentence of one year and a day in this case would be unwarranted given the nature of the defendant's conduct and would also be disproportionate to other recent sentences in this district in cases arising from fraudulent SBA loans obtained in the wake of the CARES Act.  In all these cases, defendants have received a meaningful custodial sentence. *See e.g., United States v. Adley Bernadin*, 22-CR-10110-IT (15 month sentence for defendant who obtained over $400,000 in one fraudulent PPP loan and tried to obtain additional loans); *United States v. Ronald Buie*, 22-cr-10042-DPW (18 month sentence for defendant who obtained SBA loans and Pandemic Unemployment Assistance ("PUA") exceeding $300,000 using stolen and fabricated identities); *United States v. Elijah Buoi*, 20-cr-10130-FDS (39 month post-trial sentence for defendant that submitted fraudulent applications for high-dollar SBA loans but accessed and spent less than $30,000 in proceeds); *United States v. William Cordor,* 21-cr-40016-TSH (33 month sentence for defendant that received $8,00 in Economic Injury Disaster Loan ("EIDL") disbursement and who also sought PUA benefits); *United States v. Roosevelt Fernandez*, 21-cr-10046-RGS (60 month sentence for recidivist defendant who committed EIDL fraud and tax offenses); *United States v. John Casey*, 20-cr-10202-ADB (48 month sentence for defendant who sought fraudulent EIDL and PPP loans, and who also committed two unrelated fraud schemes).

  Furthermore, a sentence of a year and a day would be unwarranted because it would be markedly below the national average sentence for similar crimes.  According to the Judiciary Sentencing Information ("JSIN") data outlined in the PSR, in the last five years, there were 681 similarly situated defendants (*i.e.* Criminal History Category 1 with a Final Offense Level of 20).

¶ 98.  For the 650 defendants who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 26 months and the median length of imprisonment imposed was 27 months.  *Id.*  The government's recommendation of 25 months appropriately fits within this range.

Finally, a sentence of a year and a day is unwarranted because such a result would fail to deter – and might in fact encourage—future fraudsters.  It is no secret that many other people, like the Defendant, fraudulently took advantage of COVID-19 relief funds; in fact, it is estimated that as much as $200 billion, or about 17 percent of total PPP and EIDL funds were fraudulently obtained.  https://thehill.com/business/4070242-over-200-billion-in-covid-19-loans-paid-to-potentially-fraudulent-actors-estimates/ (visited 7/21/23).  This case, like others involving COVID-19 fraud, involves significant considerations of general deterrence and warrants a custodial sentence.

Here, the defendant quickly, and fraudulently, obtained a large sum of money.  In Massachusetts, the median household income is roughly $84,000. https://www.census.gov/quickfacts/fact/table/MA/INC110220 (visited 10/27/22).  The defendant fraudulently obtained almost 20 times that amount of money through the instant fraud.  For an individual to reap over $1.5 million dollars via deliberate fraud, but not face the prospect of meaningful prison time, risks sending the message that crime does in fact pay.  Additionally, individuals, like the defendant, that took advantage of a newly constructed social safety net during an unprecedented global pandemic should face a meaningful prison sentence to send a message to those who might consider taking advantage of similar government benefits programs in the future.

For these reasons, and those to be discussed at the sentencing hearing, the government respectfully submits that the Court should impose a sentence that includes a term of imprisonment of 25 months.

                                              Respectfully submitted,

                                              JOSHUA S. LEVY
                                              ACTING UNITED STATES ATTORNEY

                            By:    */s/ Benjamin Saltzman*
                                      Benjamin A. Saltzman
                                      Assistant U.S. Attorney

Dated:   July 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                              */s/ Benjamin A. Saltzman*
                                              Benjamin A. Saltzman
                                              Assistant U.S. Attorney